1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRUCE MCCOY,                          No.  2:13-cv-0952 JAM DAD

12              Plaintiff,

13        v.                               FINDINGS AND RECOMMENDATIONS

14   CAROLYN W. COLVIN, Commissioner
     of Social Security,
15

16              Defendant.

17

18        This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.

20   For the reasons explained below, it is recommended that plaintiff's motion be denied, defendant's

21   cross-motion be granted, and that the decision of the Commissioner of Social Security

22   (Commissioner) be affirmed.

23                      PROCEDURAL BACKGROUND

24        Plaintiff first filed a claim for benefits on June 16, 1989.  (Transcript ("Tr.") at 480.)  That

25   claim was denied at the initial level on August 18, 1989.  (Id.)  On February 13, 2002, plaintiff

26   filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security

27   Act ("the Act"), alleging disability beginning on June 21, 1988.  (Id. at 57-60.)  Plaintiff's

28   application was denied initially, (id. at 41-44), and upon reconsideration.  (Id. at 48-51.)  Plaintiff

1

1    requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on May

2    1, 2003.  (Id. at 265-82.)  In a decision issued on June 10, 2003, the ALJ found that plaintiff was

3    not disabled.  (Id. at 29.)  On December 17, 2008, the Appeals Council denied plaintiff's request

4    for review of the ALJ's June 10, 2003 decision.  (Id. at 5-7.)

5           Plaintiff sought judicial review of that decision pursuant to 42 U.S.C. § 405(g) by filing a

6    civil action in this court, McCoy v. Astrue, No. CIV S-09-0441 DAD.  In an order dated

7    September 26, 2010, the undersigned found that plaintiff was "entitled to summary judgment on

8    his claim that the ALJ erred when he found that plaintiff did not suffer from [] any severe

9    impairment." (Tr. at 497.)  The matter was remanded back to the ALJ with an order that the ALJ

10   recognize plaintiff's mental impairments as severe at step two of the sequential evaluation and

11   proceed with the sequential evaluation.  (Id. at 504.)

12          On October 27, 2011, another hearing was held before an ALJ.  (Id. at 737-82.)  Plaintiff

13   was represented by an attorney and testified at the administrative hearing.  (Id. at 737-38.)  In a

14   decision issued on June 19, 2012, the ALJ found that plaintiff was not disabled.  (Id. at 469-81.)

15   The ALJ entered the following findings:

16          1.  The claimant last met the insured status requirements of the
             Social Security Act on December 31, 1993.
17

18          2.  The claimant did not engage in substantial gainful activity
             during the period from his alleged onset date of June 21, 1998
             through his date last insured of December 31, 1993.  (20 CFR
19          404.1571 et seq.).

20          3.  Through the date last insured, the claimant had the following
             severe impairments:  bipolar disorder and depressive disorder (20
21          CFR 404.1520(c)).

22          4.  Through the date last insured, the claimant did not have an
             impairment or combination of impairments that met or medically
23          equaled the severity of one of the listed impairments in 20 CFR Part
             404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and
24          404.1526).

25          5.  After careful consideration of the entire record, the undersigned
             finds that, through the date last insured, the claimant had the
26          residual functional capacity to perform a full range of work at all
             exertional levels but with the following nonexertional limitations:
27          he could understand, remember and carry out one to three step
             simple tasks but not complex tasks; could not be part of team (sic)
28          or work on an assembly line; could not be involved with production

                                              2

or fast paced work activities; could interact appropriately with the public but should avoid more than occasional interaction with supervisors.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on November 12, 1940 and was 53 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).[1]

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from June 21, 1988, the alleged onset date, through December 31, 1993, the date last insured (20 CFR 404.1520(g)).

12.  The claimant has failed to show that he lacked the mental capacity to understand the procedures required to request review of the August 18, 1989 initial denial of his June 16, 1989 application for disability insurance benefits.

13.  Accordingly, the undersigned finds that there is no good cause to reopen the August 18, 1989 unfavorable determination and that the claimant's request to reopen this determination is denied.

(Id. at 473-81.)

On March 20, 2013, the Appeals Council denied plaintiff's request to assume jurisdiction over the ALJ's June 19, 2012 decision, finding that the ALJ's decision was fully supported and that no further action was warranted.  (Id. at 447-49.)  Plaintiff sought judicial review pursuant to

---

[1]  This is clearly a typographical error, since 53 is not in the 18-49 age category.  Nonetheless, the error was harmless because the ALJ found that plaintiff had only nonexertional limitations and because the Vocational Expert's testimony was based on a hypothetical of an individual "born on November 12, 1940," plaintiff's true date of birth.  (Tr. at 706.)  See generally Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (at step five ALJ may take testimony from vocational expert or reference grids).

3

1   42 U.S.C. § 405(g) by filing the complaint in this action on May 14, 2013.[2]

2                                    LEGAL STANDARD

3         "The district court reviews the Commissioner's final decision for substantial evidence,

4   and the Commissioner's decision will be disturbed only if it is not supported by substantial

5   evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).

6   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

7   support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

8   Chater, 108 F.3d 978, 980 (9th Cir. 1997).

9         "[A] reviewing court must consider the entire record as a whole and may not affirm

10  simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin.,

11  466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

12  1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

13  reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari, 298 F.3d

14  1072, 1075 (9th Cir. 2002).

15        A five-step evaluation process is used to determine whether a claimant is disabled. 20

16  C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

17  process has been summarized as follows:

18                Step one: Is the claimant engaging in substantial gainful activity?  If
                  so, the claimant is found not disabled.  If not, proceed to step two.
19

20                Step two: Does the claimant have a "severe" impairment?  If so,
                  proceed to step three.  If not, then a finding of not disabled is
21                appropriate.

22                Step three: Does the claimant's impairment or combination of
                  impairments meet or equal an impairment listed in 20 C.F.R., Pt.
                  404, Subpt. P, App. 1?  If so, the claimant is automatically
23                determined disabled.  If not, proceed to step four.

24                Step four: Is the claimant capable of performing his past work?  If
                  so, the claimant is not disabled. If not, proceed to step five.
25

26  /////

27  _____

28  [2]  Plaintiff is proceeding on the second amended complaint filed November 1, 2013.  (Dkt. No.
    11.)

                                              4

1
2
Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

3
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

4
5
6
7
     The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

8
APPLICATION

9
10
11
12
13
14
15
     In his pending motion plaintiff argues that the ALJ committed the following six principal errors in finding him not disabled:  (1) the ALJ erred at step two of the sequential evaluation; (2) the ALJ erred at step three of the sequential evaluation; (3) the ALJ's treatment of the medical opinion evidence constituted error; (4) the ALJ's treatment of the witness testimony constituted error; (5) the ALJ failed to pose a legally adequate hypothetical question to the Vocational Expert; and (6) the ALJ erred by failing to reopen the prior decision denying plaintiff benefits.[3] (Pl.'s MSJ (Dkt. No. 11) at 29-60.[4])

16
I.    Step Two

17
18
19
20
     Plaintiff argues that the ALJ erred at step two of the sequential evaluation because the ALJ "found that Plaintiff had only two severe impairments prior to December 31, 1993," but that the ALJ's "finding 4 . . . determined that Plaintiff did not have a qualifiable impairment or combination of impairments . . . ."  (Pl.'s MSJ (Dkt. No. 11) at 29.)

21

22
23
24
25
26
[3]  Plaintiff is proceeding on a second amended complaint "AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT."  (Dkt. No. 11 at 1.)  That document is sixty pages in length and attempts to dispute nearly every paragraph of the ALJ's June 19, 2012 opinion, largely supported only by unclear and incoherent arguments.  In light of plaintiff's pro se status, the undersigned has liberally construed the document and reorganized plaintiff's arguments for purposes of clarity.  In this regard, although plaintiff's motion purports to put forth eleven individual arguments, five of those arguments concern the ALJ's treatment of the medical opinion evidence.  Accordingly, those arguments will be addressed as one issue herein.

27
28
[4]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1    However, the findings plaintiff refers to concern different steps of the sequential

2    evaluation.  In this regard, at step two of the sequential evaluation, the ALJ must determine if the

3    claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater,

4    80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The Commissioner's

5    regulations provide that "[a]n impairment or combination of impairments is not severe if it does

6    not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20

7    C.F.R. §§ 404.1521(a) & 416.921(a).  "[A]n ALJ may find that a claimant lacks a medically

8    severe impairment or combination of impairments only when his conclusion is 'clearly

9    established by medical evidence.'"  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting

10   Social Security Ruling ("SSR") 85-28).  See also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th

11   Cir. 2005) (a claimant failed to satisfy the step two burden where "none of the medical opinions

12   included a finding of impairment, a diagnosis, or objective test results").  "Step two, then, is 'a de

13   minimis screening device [used] to dispose of groundless claims[.]'"[5]  Webb, 433 F.3d at 687

14   (quoting Smolen, 80 F.3d at 1290).  See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th

15   Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS,

16   2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as

17   "low").

18   In contrast, at step three of the sequential evaluation, the ALJ must determine whether a

19   claimant's impairment or impairments meet or equal one of the specific impairments set forth in

20   the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The physical and mental

21   conditions contained in the Listings are considered so severe that "they are irrebuttably presumed

22   disabling, without any specific finding as to the claimant's ability to perform his past relevant

23   work or any other jobs."  Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995).  The Listings were

24   "designed to operate as a presumption of disability that makes further inquiry unnecessary."

25   [5]  Throughout plaintiff's motion he cites to the undersigned's order in McCoy v. Astrue, No. CIV
26   S-09-0441 DAD, 2010 WL 3783641 (Sept. 27, 2010 E.D. Cal.).  In that order, the undersigned
     found only that the plaintiff was entitled to summary judgment on his claim that the ALJ erred by
27   finding that plaintiff did not suffer from a severe impairment, thereby stopping the sequential
     evaluation at step two.  In plaintiff's case, the ALJ proceeded past the de minimis screening
28   standard applicable at step two and completed the sequential evaluation.

1   Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  See also Lewis v. Apfel, 236 F.3d 503, 512 (9th

2   Cir. 2001).  If a claimant shows that his impairments meet or equal a Listing, he will be found

3   presumptively disabled.  20 C.F.R. §§ 404.1525-404.1526, 416.925-416.926.

4          Here, at step two of the sequential evaluation the ALJ found that plaintiff's bipolar

5   disorder and depressive disorder constituted severe impairments.  (Tr. at 473.)  However, at step

6   three of the sequential evaluation, the ALJ found that none of plaintiff's impairments alone, or in

7   combination, equaled the severity of a Listing impairment.  (Id.) Thus, the ALJ properly

8   employed the sequential evaluation procedure and plaintiff has not shown that the ALJ erred at

9   step two of that process.

10         Accordingly, plaintiff's motion for summary judgment should be denied as to this claim.

11  II.    Step Three

12         Plaintiff argues that the ALJ erred at step three of the sequential evaluation by finding that

13  plaintiff did not suffer from an impairment or combination of impairments that met or medically

14  equaled the severity of one of the Listing impairments.  (Pl.'s MSJ (Dkt. No. 11) at 30.)  In this

15  regard, plaintiff argues that the ALJ failed to sufficiently analyze the evidence and explain the

16  reasoning in support of this finding.  (Id. at 30-34.)

17         An ALJ is required to adequately explain the basis for her determination that an

18  applicant's impairments do not equal a Listing.  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir.

19  1990).  However, an ALJ is not required to "state why a claimant failed to satisfy every different

20  section of the listing impairments."  Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

21  Accordingly, a well-developed discussion of the factual basis of a claimant's impairments

22  elsewhere in a hearing decision may, under certain circumstances, support an unexplained finding

23  of no medical equivalence at step three.  Id. at 1201 (finding that an ALJ's four-page summary of

24  the record was an adequate basis for the otherwise unexplained statement that the applicant's

25  impairments did not meet or equal a Listing).

26         Here, the ALJ provided a well-developed discussion of the factual basis of plaintiff's

27  impairments elsewhere in the decision.  The ALJ's opinion explicitly states that, "the following

28  residual functional capacity assessment reflects the degree of limitation the undersigned has

7

1  found in the 'paragraph B' mental functional analysis." (Tr. at 474.) The ALJ's opinion then

2  provides a multipage recitation and evaluation of the medical evidence of record, which supports

3  the ALJ's finding. See Nance v. Colvin, No. CV 13-4633-DFM, 2014 WL 3347027, at *3 (C.D.

4  Cal. July 8, 2014) ("This review of the evidence supports the ALJ's step three finding under

5  Gonzalez, and the ALJ did not err in failing to explain further his finding that Plaintiff's

6  impairments were not medically equivalent to any listed impairments."); Alvarez v. Astrue, 1:09-

7  CV-00334-GSA, 2010 WL 3853035, at *8 (E.D. Cal. Sept. 29, 2010) ("Although the ALJ did not

8  specifically elaborate on her rationale under the severity impairments heading, she provided a

9  comprehensive recitation of the medical evidence which provided an adequate statement of the

10  foundations on which the ultimate factual conclusions [were] based.").

11    Accordingly, plaintiff's motion for summary judgment should be denied with respect to

12  his argument that the ALJ erred at step three.

13  III. Medical Opinion Evidence

14    Plaintiff argues that the ALJ erred in rejecting the medical opinions of plaintiff's treating

15  physicians, Dr. Ronald C. Diebel and Dr. Alfred French, in favor of the medical opinions of

16  examining physicians Dr. R. Eugene Woods, Dr. Allan Sidle and Dr. William MacMaster, and

17  the non-examining physician testimony offered by Dr. Sidney Walter. (Pl.'s MSJ (Dkt. No. 11)

18  at 34-46.) In this regard, plaintiff accuses the ALJ of "cherry picking" evidence and failing to

19  adequately develop the record. (Id. at 38.)

20    The weight to be given to medical opinions in Social Security disability cases depends in

21  part on whether the opinions are proffered by treating, examining, or nonexamining health

22  professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a

23  general rule, more weight should be given to the opinion of a treating source than to the opinion

24  of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a

25  treating doctor is employed to cure and has a greater opportunity to know and observe the patient

26  as an individual. Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir.

27  1990). The uncontradicted opinion of a treating or examining physician may be rejected only for

28  clear and convincing reasons, while the opinion of a treating or examining physician that is

controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  (Id. at 831.)  Although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).  Greater weight should be given to the "'opinion of a specialist about medical issues related to his or her area of specialty.'"  Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)).

Here, with respect to plaintiff's treating physician Dr. Ronald C. Diebel, the ALJ acknowledged that Dr. Diebel, "issued a medical source statement on July 19, 2011," stating that he had treated plaintiff from 1988 through 1992, and that during this period of time, plaintiff had a Global Assessment of Functioning ("GAF") score of 40, "marked impairment in his ability to concentrate as well as in his ability to interact with his peers or supervisors."  (Tr. at 476.)  However, the ALJ found that she was "unable to credit" Dr. Diebel's opinion because Dr. Diebel had also "issued medical source statements in 1990, 1991, and 1992 essentially finding the claimant was asymptomatic after leaving his employment at Westinghouse."  (Id.)

The ALJ noted that "while Dr. Diebel continued to keep the claimant off work, [his] findings on mental status examinations were minimal and Dr. Diebel consistently indicated the claimant was a qualified injured worker and needed retraining."  (Id.)  Moreover, "[t]here were no conclusions or notations from Dr. Diebel that the claimant was totally disabled or precluded from all work activity" during the relevant period of time.  (Id.)  The ALJ then proceeded to discuss multiple medical source statements issued during the relevant period of time in which Dr. Diebel stated that plaintiff was "not disabled from all occupations" and that his symptoms had "abated" or were in "partial remission" after plaintiff stopped working for his former employer.  (Id.)
/////

9

1    The ALJ's finding that Dr. Diebel's various opinions were contradictory is supported by

2    the evidence of record, (see Tr. at 168-69, 171-73, & 176), and was a valid basis for rejecting his

3    medical opinion.  See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (a treating

4    physician's opinion is properly rejected where the treating physician's treatment notes "provide

5    no basis for the functional restrictions he opined should be imposed on [the claimant]"); see also

6    Flores v. Colvin, No. 11-17786, 546 Fed Appx. 638, 640 (9th Cir. Nov. 1, 2013) (ALJ properly

7    rejected treating physician's opinion in part because opinions of "treating physicians contained

8    contradictory information.").[6]

9    With respect to plaintiff's treating physician Dr. Alfred French, the ALJ acknowledged

10   that on June 2, 2003, Dr. French "performed a comprehensive evaluation of the" plaintiff and

11   diagnosed him as suffering from bipolar disorder II, attention deficit disorder, obsessive

12   compulsive disorder, dementia, an anxiety disorder, and as having a GAF score ranging from 21

13   to 30.  (Tr. at 475.)  The ALJ noted that the "record certainly shows a significant worsening in the

14   claimant's mental impairments and in his ability to perform work-related mental activities in

15   2003," while also citing to the treatment notes of Dr. Edward Eaton from this same period of

16   time.  (Id.)

17   However, the relevant period of time at issue here is from June 21, 1988, the alleged date

18   of the onset of plaintiff's disability, to December 31, 1993, the date plaintiff was last insured.  In

19   this regard, the ALJ found that she could not afford Dr. French's opinion "any weight," because

20   his examination of plaintiff occurred "15 years after the claimant's alleged onset date and he was

21   not a treating physician during the relevant time period."  (Id. at 475-76.)  Moreover, the ALJ

22   correctly noted that Dr. French's opinion was "contrary to the examining physicians who actually

23   evaluated the claimant during the pertinent period."  (Id. at 476.)

24   In this regard, the ALJ noted that Dr. Eugene Woods examined plaintiff on October 17,

25   1988.  (Id. at 475, 477.)  Dr. Woods found "no evidence to document the existence of a

26   psychiatric diagnosis and no signs or symptoms of anxiety or depression either in the past or

27

28   [6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

10

1   during the evaluation." (Id. at 477.)  Accordingly, Dr. Woods stated that plaintiff "had absolutely

2   no symptoms of psychiatric dysfunction, was not at all depressed, did not exhibit any symptoms

3   of anxiety and a mental status examination revealed no impairment in the claimant's ability to

4   concentrate."[7] (Id. at 475.)

5          The ALJ also noted that Dr. Allan Sidle "performed a comprehensive examination of the

6   claimant on April 3, 1989,"[8] and opined that plaintiff "had no psychiatric symptoms, did not

7   appear to be clinically anxious or depressed; did not suffer from a psychophysiologic disorder and

8   did not need psychiatric treatment at that time." (Id.)  Dr. Sidle opinioned that while plaintiff

9   "was becoming increasingly more depressed during the first half of 1988," he "very quickly

10  improved, being away from his work environment" at Westinghouse. (Id. at 157.)  Accordingly,

11  Dr. Sidle expressed the opinion that while plaintiff was "precluded from returning to work at

12  Westinghouse . . . . vocational rehabilitation services" would be appropriate. (Id. at 158.)

13         Finally, the ALJ noted that plaintiff was examined by Dr. William MacMaster on March

14  26, 1990. (Id. at 478.)  Dr. MacMaster noted that plaintiff had remarried and relocated to Grass

15  Valley, where he remolded his home. (Id. at 166.)  In light of plaintiff's "successful ability to

16  remodel his home in Grass Valley, to exercise, to adapt to a new marriage, and a relocation," Dr.

17  MacMaster opined that plaintiff was "capable of going back to work." (Id.)

18         The ALJ's findings with respect to the opinions of Dr. Woods, Dr. Sidle and Dr.

19  MacMaster are supported by the evidence of record in this case. (See Tr at. 117-58, 163-66.)

20  Moreover, "[a]n examining physician's opinion constitutes substantial evidence when it is based

21  on independent clinical findings." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). See also

22  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1995) ("Where the opinion of the claimant's

23  treating physician is contradicted, and the opinion of a nontreating source is based on independent

24  clinical findings that differ from those of the treating physician, the opinion of the nontreating

25  ───────────────

    [7]  It was Dr. Woods' opinion that it was "quite clear that" plaintiff was "a man who is motivated

26  not to return to his job at Westinghouse, rather than a man who is disabled in regard to doing so."
    (Tr. at 134.)

27

28  [8]  The record reflects that Dr. Sidle actually examined plaintiff on January 26, 1989 and March
    10, 1989, and issued his opinion on April 3, 1989. (Tr. at 136.)

                                                      11

1    source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the

2    conflict".).

3           The ALJ also afforded "significant weight" to the testimony of Dr. Sidney Walter, a non-

4    treating, non-examining physician.[9]  (Tr. at 478.)  The ALJ noted that, based on "his evaluation of

5    the record and claimant's testimony," it was Dr. Walter's opinion that plaintiff "suffered from

6    agitated depression while working at Westinghouse and that his depression abated after leaving

7    his employer," to an extent that plaintiff "was capable of performing 1 to 3 step work functions of

8    a simple to semi-complex nature but was not able to work as part of a team or on an assembly

9    line."  (Id. at 476.)  Of course, "[t]he opinions of non-treating or non-examining physicians may

10   also serve as substantial evidence when the opinions are consistent with independent clinical

11   findings or other evidence in the record."  Thomas v. Barnhart, 278 F.3d 948, 957 (9th Cir. 2002).

12          For the reasons stated above, the undersigned finds that the ALJ's treatment of the

13   medical opinion evidence of record in this case did not constitute error.  Accordingly, plaintiff's

14   motion for summary judgment should be denied as to his claim that the ALJ erred in rejecting the

15   opinions of plaintiff's treating physicians.

16   IV.    Witness Testimony

17          Plaintiff next argues that the ALJ's treatment of plaintiff's own subjective testimony

18   constituted error.  (Pl.'s MSJ (Dkt. No. 11) at 47, 53.)

19          The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's

20   credibility as follows:

21                 To determine whether a claimant's testimony regarding subjective
                   pain or symptoms is credible, an ALJ must engage in a two-step
22                 analysis.  First, the ALJ must determine whether the claimant has
                   presented objective medical evidence of an underlying impairment
23                 which could reasonably be expected to produce the pain or other
                   symptoms alleged.  The claimant, however, need not show that her
24                 impairment could reasonably be expected to cause the severity of
                   the symptom she has alleged; she need only show that it could
25
_____
26   [9]  Plaintiff argues that Dr. Walter "was not a doctor."  (Pl.'s MSJ (Dkt. No. 11) at 42.)  However,
     the record reveals that Dr. Walter had an Ed.D in educational psychology and a Ph.D in clinical
27   psychology.  (Tr. at 586-88.)  A licensed psychologist is an "acceptable medical source[ ]" for
     purposes of determining whether an impairment has been established within the meaning of 20
28   C.F.R. § 416.913(a).

reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment.  (Tr. at 475.)  In this regard, the ALJ found that although plaintiff was "a credible historian some of the testimony provided [was] contrary to the actual progress notes during the relevant time frame . . . ."  (Id. at 479.)  Specifically, the ALJ noted that while plaintiff "suffered some significant stress . . . while working at Westinghouse," the records also demonstrated that after he left Westinghouse plaintiff

1    was "able to travel, remarry, relocate, help friends with projects and remodel a home in Grass

2    Valley."  (Id.)  Moreover, although plaintiff testified about memory problems, no such memory

3    problems were "demonstrated in mental status examinations during the period from 1988 through

4    1993 . . . ."  (Id.)

5          The ALJ is permitted to consider such evidence in evaluating plaintiff's testimony.

6    See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) ("These inconsistencies [lab reports

7    contradicting plaintiff's subjective complaint] constitute significant and substantial reasons to

8    find Parra's testimony less than completely credible."); Burch v. Barnhart, 400 F.3d 676, 680-81

9    (9th Cir. 2005) (ALJ may properly rely on inconsistency between claimant's subjective

10   complaints and objective medical findings); Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.

11   1991) (including effectiveness of medication, treatment other than medication, the claimant's

12   daily activities, and ordinary techniques of credibility evaluation among the factors that may be

13   considered by an ALJ in assessing the credibility of allegedly disabling subjective symptoms).

14         In addition to plaintiff's testimony, the ALJ acknowledged that plaintiff's wife "issued a

15   very detailed written statement regarding the claimant's ability to function mentally."  (Tr. at

16   475.)  The ALJ, however, failed to provide a reason for discounting that statement.  Here,

17   defendant argues that the ALJ's failure to adequately address the statement from plaintiff's wife

18   was harmless error.  (Def.'s MSJ (Dkt. No. 22) at 14.)

19         The testimony of lay witnesses, including family members and friends, reflecting their

20   own observations of how the claimant's impairments affect his activities must be considered and

21   discussed by the ALJ.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Robbins v. Soc.

22   Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).  Lay witness testimony "cannot be disregarded

23   without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  If the ALJ chooses

24   to reject or discount the testimony of a lay witness, he or she must give specific reasons germane

25   to each particular witness in doing so.  Valentine, 574 F.3d at 694; Regennitter v. Commissioner

26   of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-

27   19 (9th Cir. 1993).

28   /////

The ALJ's failure to specifically provide her reasons for not adopting the witness statement offered by plaintiff's wife constitutes error.  Id.; see also Tobeler v. Colvin, 749 F.3d 830, 834 (9th Cir. 2014) ("lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment"); Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006) ("ALJ must consider lay witness testimony").

However, the ALJ did not completely ignore the evidence in question but rather noted that the allegations found in the statement offered by plaintiff's wife were essentially "the same as those given by the claimant . . . ."  (Tr. at 475.)  Because the ALJ gave clear and convincing reasons for rejecting plaintiff's own testimony, those same reasons also would serve as germane reasons for rejecting the statement offered by plaintiff's wife.  Thus, the ALJ's failure to specifically state that she was rejecting his wife's statement for the same reasons as she had rejected plaintiff's own subjective testimony constitutes harmless error.  See Lubin v. Commissioner of Social Sec. Admin., No. 11-35462, 507 Fed. Appx. 709, 712 (9th Cir. 2013) ("[T]he error was harmless because Mrs. Lubin's testimony was substantially, if not exactly, the same as Lubin's")[10]; Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) ("an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims"); Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011) ("same evidence that the ALJ referred to in discrediting Buckner's claims also discredits the girlfriend's claims"); Valentine, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Accordingly, plaintiff's motion for summary judgment with respect to his claim that the ALJ erred in her treatment of testimony offered by plaintiff and the statement of his wife, should be denied.

---

[10]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

V.      Adequate Hypothetical

Plaintiff argues that the ALJ failed to properly determine plaintiff's Residual Functional Capacity ("RFC") and, therefore, failed to pose a legally adequate hypothetical question to the Vocational Expert ("VE") who testified at the administrative hearing.  (Pl.'s MSJ (Dkt. No. 11) at 46-57.)

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  Id. (citation and quotation marks omitted).  See also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, although plaintiff vehemently disagrees with almost every one of the ALJ's findings, the undersigned has found no harmful error with respect to any of those findings.  The ALJ's hypothetical question posed to the VE properly included only those limitations that the ALJ found to exist.  (Tr. at 706.)  Because the ALJ included in her question all of the limitations she found to exist, and because those findings were supported by substantial evidence in the record, the ALJ posed a legally adequate hypothetical question to the VE.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Accordingly, plaintiff's motion for summary judgment should be denied as to this claim.

VI.     Prior Decision

As noted at the outset, plaintiff's previously applied for disability benefits on June 16, 1989.  (Tr. at 480.)  That disability claim was denied at the initial level on August 18, 1989.  (Id. at 322.)  In her June 19, 2012 opinion, the ALJ found that plaintiff had "failed to show that he

16

1    lacked the mental capacity to understand the procedures required to request review of the August

2    18, 1989 initial denial . . . ." (Id. at 481.)  Accordingly, the ALJ found that there was "no good

3    cause to reopen the August 18, 1989 unfavorable determination," and denied plaintiff's request to

4    reopen that application.  (Id.)

5        Ordinarily, a claimant has sixty days from the date he receives notice of a SSA denial to

6    request reconsideration of that decision.  20 C.F.R. § 416.1409(a).  However, SSR 91-5p provides

7    that a claimant may establish good cause to warrant reopening of a previously denied application,

8    "regardless of how much time has passed," if he proves that:  (1) his mental incapacity prevented

9    him from timely requesting review and (2) that he had no legal representation at the time.  SSR

10   91-5p.  Accord Udd v. Massanari, 245 F.3d 1096, 1099 (9th Cir. 2001) ("The claimant will have

11   established mental incapacity . . . when the evidence establishes that he or she lacked the mental

12   capacity to understand the procedures for requesting review.") (citation and quotation marks

13   omitted).

14       Here, the ALJ found that the evidence of record failed to establish that plaintiff lacked the

15   mental capacity to understand the procedures for requesting review of the adverse August 18,

16   1989 decision.  In opposing this finding, plaintiff argues that the "nature of Plaintiff's

17   impairments support the fact that the Plaintiff lacked the comprehensive capacity at the time," and

18   notes that "also . . . the Plaintiff's wife of 22 years had just passed away . . . ." (Pl.'s MSJ (Dkt.

19   No. 11) at 57.)

20       Plaintiff, however, has not pointed to any evidence that would call into question his

21   mental capacity to understand the procedures for requesting review of the August 18, 1989

22   decision at the initial level denying his claim for benefits and none is apparent from the record.

23   As the ALJ noted in her opinion, "every examining and treating physician in this case concluded

24   the claimant could return to some form of employment . . . during the time period from 1988

25   through 1993." (Tr. at 479.)  Moreover, plaintiff's treating physician noted, on February 2, 1990,

26   that plaintiff was "essentially symptom free when not in his old work environment . . . ." (Id. at

27   176.)

28   /////

17

1    Accordingly, plaintiff's motion for summary judgment should be denied as to this claim

2    as well.

3                                        CONCLUSION

4    The undersigned has found that plaintiff should not be granted summary judgment in his

5    favor with respect to any of his arguments.

6    Accordingly, IT IS HEREBY RECOMMENDED that:

7         1.  Plaintiff's motion for summary judgment (Dkt. No. 11) be denied;

8         2.  Defendant's cross-motion for summary judgment (Dkt. No. 22) be granted; and

9         3.  The decision of the Commissioner of Social Security be affirmed.

10   These findings and recommendations are submitted to the United States District

11   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

12   days after being served with these findings and recommendations, any party may file written

13   objections with the court and serve a copy on all parties.  Such a document should be captioned

14   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15   shall be served and filed within seven days after service of the objections.  The parties are advised

16   that failure to file objections within the specified time may waive the right to appeal the District

17   Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18   Dated:  February 4, 2015

19

20   _____
     DALE A. DROZD
21   UNITED STATES MAGISTRATE JUDGE

22   DAD:6
     Ddad1\orders.soc sec\mccoy0952.f&rs.docx
23

24

25

26

27

28

18